IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

ALDEN PAULINE, #A0256259,      )   CIV. NO. 13-00612 HG/RLP
                               )
          Plaintiff,           )   FINDINGS AND RECOMMENDATION RE:
                               )   REQUEST FOR COURT HEARING;
          vs.                  )   ORDER TO SHOW CAUSE RE: UNNAMED
                               )   HCF MEDICAL STAFF; ORDER
WARDEN ESPINDA, et al.,        )   DENYING IN PART AND GRANTING IN
                               )   PART REQUEST TO AMEND OR
          Defendants.          )   SUPPLEMENT COMPLAINT
_____)

**FINDINGS AND RECOMMENDATION RE: REQUEST FOR COURT HEARING;[1] ORDER
TO SHOW CAUSE RE: UNNAMED HCF MEDICAL STAFF;
ORDER DENYING IN PART AND GRANTING IN PART
REQUEST TO AMEND OR SUPPLEMENT COMPLAINT**

          Before the court are Plaintiff's (1) Request for Court

Hearing, Doc. No. 65; and (2) Requests to Supplement or Amend

Complaint, Doc. Nos. 80, 86.  Defendants have opposed Plaintiff's

Requests.  *See e.g.*, Nakashima Decl., Doc. No. 68,; Antonio

Decl., Doc. No. 68-1,; Antonio Decl., Doc. No. 87; Defs.' Opp'n

to Req. to Supplement Compl., Doc. No. 95.  The court liberally

construes the following documents as Plaintiff's responses, at

least in part, to Defendants' declarations and Opposition.  *See

e.g.*, Doc. Nos. 69, 73, 78, 79, 80, 84, 85, 90, 91.

          Plaintiff's Requests were referred to this court

pursuant to 28 U.S.C. § 636(b)(1).  After careful consideration

---

[1] Within fourteen days after a party is served with a copy of a Findings
and Recommendation, that party may file written objections in the United
States District Court pursuant to 28 U.S.C. § 636(b)(1)(B).  A party must file
any objections within the fourteen-day period allowed if that party wants
appellate review of the Findings and Recommendation.  If no objections are
filed, no appellate review will be allowed.

of the parties' briefs and the entire record, the court FINDS and
RECOMMENDS that Plaintiff's Requests for Court Hearing be DENIED;
DENIES IN PART AND GRANTS IN PART Plaintiff's Request to Amend or
Supplement Complaint; and ORDERS Plaintiff to SHOW CAUSE why
Unnamed HCF medical staff should not be dismissed.

## I. BACKGROUND

Plaintiff, a prisoner proceeding pro se, filed this
action on November 13, 2013. Compl., Doc. No. 1. Plaintiff
claims he was an informant at the Halawa Correctional Facility
("HCF") for a "Sgt. Kimo," and "Public Safety IG," regarding a
drug and contraband operation between HCF guards and "USO and Lf"
inmates.[2] *Id.*, PageID #18. Plaintiff claims that on October 29-
31 and November 7 and 9, 2013, Adult Correctional Officer ("ACO")
Rich opened the cell doors in his module, to "set [him] up . . .
From USO and Lf inmates [who] sexual abuse me kicking me to the
floor cuting [sic] my head and eye open," in retaliation for his
alleged assistance in the HCF drug/contraband operation. *Id.*,
PageID #18. He claims ACO Kenny was also involved that neither
ACO intervene during these alleged attacks.

Plaintiff states that on or about November 7, 2013, he
told Sgt. Kimo which inmates had a tattoo gun and drugs and which

---

[2] Plaintiff later identifies Kimo as Sgt. Kimo Bruhn, and alleges he was
an informant for Drug Enforcement Agency ("DEA") Agent Koa, Sheriff Kong, and
the Honolulu Police Department ("HPD"). "Public Safety IG" appears to refer
to the Hawaii Department of Public Safety ("DPS") Sheriff's Division Gang
Intelligence Unit (alternately abbreviated "GIU"). "USO" and "Lf" inmates
apparently refer to the United Samoan Organization gang and "lifer" inmates.

guards were involved.  *Id.*, PageID #20.  Plaintiff claims ACO Kenny then told the other inmates that Plaintiff was Sgt. Kimo's confidential informant.  *Id.*  He claims that Sgt. Koria harassed and failed to protect him, and ACOs Law and Ray contaminated his food and water with glass and white powder, denied him toilet paper, turned off his cell water, and confiscated his legal papers between October 27-30, 2013.  *Id.*, PageID #23.  He alleges unnamed HCF staff denied him medical care in retaliation for his assistance.  Plaintiff claims he told Warden Espinda, the unnamed HCF Chief of Security ("COS"), and unnamed HCF officials of his fears, and that Sgt. Kimo assured him that HCF officials were aware he was in danger due to his alleged assistance. Plaintiff's only request for relief is for a hearing on these claims to alert DPS Director Sakai to these problems at HCF. *Id.*, PageID #24.

The court granted Plaintiff's in forma pauperis application, despite the numerous strikes he has accrued under 28 U.S.C. § 1915(g), and ordered the Complaint served on HCF Warden Nolan Espinda, Sgt. Teuila Koria, ACO Kenny, and ACO Rich.  Doc. Nos. 6 and 7.  Plaintiff was given leave to amend to name ACOs Ray and Law in the caption of the Complaint and identify the unnamed HCF COS and other individuals if possible.  To date, Plaintiff has served only Espinda and Koria.

On September 4, 2014, because Plaintiff repeatedly filed incoherent, unauthorized, unhelpful, and non-responsive

3

documents, the court prohibited him from filing anything further
until it issued a decision on the present Request for Hearing.
*See* Doc. Nos. 82, 94.  Plaintiff continued filing motions,
requests, replies, letters, statements, witness lists, and
documents, however.  *See* Doc. Nos. 84-86, 89-93, 96, 98, 99.  The
court struck those documents that do not comply with the court's
order, but has nonetheless reviewed each to determine its
pertinence to the matters at issue.

## II.  <u>REQUEST FOR COURT HEARING</u>

From the date Plaintiff commenced this action he has
repeatedly sought to forgo service, discovery, and motions and
proceed directly to an immediate hearing on his claims.  *See,
e.g.*, Doc. Nos. 1, 13, 14, 16, 20-23, 36, 37, 44, 45, 48, 49, 55-
57, 65, 84, 90.  Before service, the court explained that it
would not hold a hearing until Defendants were served and their
attorneys made an appearance.  *See, e.g.*, Doc. Nos. 19, 21, 23,
47, 50.

After Espinda and Koria filed an Answer and the court
issued a scheduling order, Plaintiff renewed his campaign to have
his claims immediately heard before trial.  *See* Doc. Nos. 55-57.
On June 24, 2014, the court again denied Plaintiff's persistent
requests for an immediate hearing.  *See* Order, Doc. No. 63.  The
court again informed Plaintiff that his claims would be
adjudicated in a timely manner in accordance with the Federal
Rules, providing Defendants notice and an opportunity to oppose,
research, develop, and defend their case.

On August 6, 2014, the court received another Request

for Court Hearing, in which Plaintiff claimed ACOs Sgt. Manuma,

Sgt. Feagai, and Sarkissian[3] abused him in July and August 2014.

Doc. No. 65.  It states:

> Court Clerk,
>
> I'm Requesting for a Court Hereing [sic] to
> Put a Stop to ACOs Set[t]ing Me up and
> Assault[ing] Me in HCF. Sgt [Feagai] Came in
> to My Cell on a Cell Checkup Kicking Me in My
> Balls Threat[en]ing Me.
> Sgt Manuma Grab My Arm Threat[en]ing Me. ACO
> [Sarkissian] Let 3 Inmates Assault Me Takeing
> [sic] Me in to Cell 12.
>
> I Writ[t]en to the Capt Paleka of this
> Problems He Did Not[h]ing.
>
> I Writ[t]en to the COS [Chief of Security]
> Antonio to Look in to this Problem He Did
> Not[h]ing.  He Know this Was Going to Go on
> When Talk of it Be for Sending Me Back up to
> Mod G.
>
> Assault from Sgt Manuma **7 13 14**
> Assault from Sgt [Feagai] **7 24 13**
> ACO [Sarkissian] Let[t]ing this Inmates
> Assault Me **8 1 14**

*Id.*  From Plaintiff's later filings, it appears he alleges

Manuma, Feagai, and Sarkissian retaliated against him for being

an informant and for reporting that ACO Tuifau allegedly sexually

assaulted him.

On August 28, 2014, the court held a hearing to

determine if preliminary injunctive relief was required.  *See*

Doc. No. 66.  At the hearing, Defendants informed the court that

DPS was investigating Plaintiff's new allegations and other,

---

[3] The court refers to these individuals' names as Defendants referred to
them at the August 28, 2014 Hearing.

similar allegations that he had made directly to prison officials. The court directed Defendants to (1) notify it and Plaintiff when DPS completed its investigation; (2) submit the completed report for in camera review; and (3) prohibit Manuma, Feagai, and Sarkissian from contact with Plaintiff during the investigation. *Id.*

## A. Defendants' Opposition

Defendants submitted two declarations before the August 28, 2014 hearing. *See* Nakashima Decl., Doc. No. 68; Antonio Decl., Doc. No. 68-1. COS Antonio submitted a second declaration in opposition to Plaintiff's Request for Supplemental Pleading that also addresses Plaintiff's claims in his Request for Hearing. *See* Doc. No. 87. On or about October 15, 2014, Defendants submitted the confidential DPS investigation report for in camera review. Doc. No. 103.

### 1. DPS Acting Chief Investigator Patrick Nakashima's Declaration

Nakashima says he has taken seriously, and carefully investigated, Plaintiff's previous claims of staff abuse, but has found each unsubstantiated. *See* Nakashima Decl., Doc. No. 68, PageID #327 ¶¶ 3, 5. For example, Nakashima recently investigated Plaintiff's allegations that he was sexually assaulted by an unnamed ACO, and determined that this ACO was not on duty on the date that Plaintiff claimed he was attacked. *Id.* ¶ 7. On August 20, 2013, Nakashima concluded another investigation regarding Plaintiff's claims that multiple ACOs

assaulted him. *Id.* ¶ 8. Nakashima interviewed witnesses and reviewed videotapes, correspondence, institutional logs, and Plaintiff's medical records, but concluded there was no evidence to support Plaintiff's claims. *Id.* Nakashima also investigated Plaintiff's claim that he was a DEA and DPS Sheriff's Department informant, but found this claim untrue. *Id.* ¶ 9.

Nakashima states that Plaintiff's claims against Manuma, Feagai, and Sarkissian were under investigation at the time of the hearing, but he is not personally aware of any beatings or sexual assaults by HCF staff against Plaintiff. *Id.* ¶ 6. He says that Plaintiff requested and was denied a transfer to the Federal Detention Center ("FDC-Honolulu"), and speculates Plaintiff "may have fabricated the assaults because he mistakenly believes that he could be transferred to the [FDC-Honolulu] by doing so." *Id.*, ¶ 11.

### 2. *COS Lyle Antonio's Declarations*

In his first declaration, Antonio states he has investigated Plaintiff's previous allegations of staff abuse many times over the years and has taken these claims seriously, but has found them unsubstantiated. Antonio Decl., Doc. No. 68-1, ¶¶ 3-5. Antonio says that Plaintiff's claims against Manuma, Feagai, and Sarkissian are under investigation. Antonio says he is unaware of any staff assaults, sexual abuse, harassment, discrimination, or retaliation against Plaintiff, however. *Id.* ¶¶ 6, 7. He states Plaintiff has been subject to many disciplinary proceedings at HCF, ranging from fighting with other

7

inmates to making false claims against prison staff and inmates, and that Plaintiff has a documented history of hurting himself to manipulate staff.[4]  *Id.* ¶ 8.

In his second declaration, Antonio states that Plaintiff was moved to the HCF Medium Security Special Holding Unit ("SHU") on August 28, 2014, and Manuma, Feagai, and Sarkissian were prohibited from contact with him until the investigation was complete.[5]  Doc. No. 87, PageID #411 ¶ 3. Antonio states that he lacks authority to transfer Plaintiff to the FDC-Honolulu, remains unaware of any beatings or sexual assaults against Plaintiff at HCF, and has no reason to believe Plaintiff's life is in danger.  *Id.* ¶¶ 3-4, 9.

### 3. *DPS Confidential Investigation Report*

On or about October 14, 2014, Defendants submitted the DPS investigation report for in camera review.  Doc. No. 103. Because the report is confidential and has not been disclosed to

---

[4]  The court has previously determined that Plaintiff self-mutilates. *See, e.g., Pauline v. Mishra*, 1:09-cv-00520 SOM (D. Haw. Feb. 19, 2010) (revoking IFP, finding Plaintiff harmed himself to create "imminent danger"); *Pauline v. Mishner*, 1:09-cv-00182 JMS (D. Haw. May 1, 2009) (finding Plaintiff has a "history of suicidal ideation and self-mutilation;" holding "Plaintiff cannot 'create the imminent danger so as to escape the three strikes provision of the PLRA.'") (citations omitted); *Pauline v. Haw. State Hosp*, 1:09-cv-00061 SOM (same); *Pauline v. HCF Administrator*, 1:08-cv-00196 SOM (D. Haw. Apr. 28, 2008) (same); *Pauline v. Patel*, 1:07-cv-00411 HG (D. Haw. July 20, 2007) (in which Plaintiff alleged he self-mutilates because HCF medical providers refused him medication).

[5]  At the August 28, 2014 hearing, Plaintiff stated he was in protective custody.  DPS representative Shelley Nobriga, Esq., explained that HCF has two types of protective custody, one in which inmates may interact with each other, and another that is "restrictive," stating Plaintiff was in "closed custody," suggesting he is in restrictive protective custody.

Plaintiff, the court does not rely on or refer to the Report to determine Plaintiff's Requests.

**B.   Plaintiff's Reply**

In addition to his testimony at the August 28, 2014 hearing, and in light of his pro se status, the court liberally construes several of Plaintiff's documents as serial Replies and has carefully considered each, regardless of whether they were stricken.  *See* Doc. Nos. 73, 74, 79, 80, 84 (stricken), 85 (stricken), 90 (stricken), 91 (stricken), 93 (stricken), 99.  The court has also carefully reviewed the entire record.  Plaintiff, however, has submitted no competent, tangible evidence, beyond his unsworn allegations in his Request and statements at the hearing, to support a claim for injunctive relief.

At the hearing, Plaintiff referred to incidents that allegedly occurred on or about February 24-27, 2013, when he alleges ACO Tuifau harassed and sexually assaulted him for providing information to prison officials, the DEA, and HPD regarding Tuifau's friend and family members.  Plaintiff asserted that his report of Tuifau's alleged sexual assault precipitated the incidents alleged in his Request for Hearing.  In the many documents Plaintiff submitted after Request for Hearing, Plaintiff lists numerous potential witnesses who he alleges witnessed the assaults at issue or in the Complaint, saw his injuries, or experienced similar harassment, intimidation, and assaults at HCF by guards or other inmates.  Plaintiff also

claims that Nakashima told him he knew "something was going on," but was unable to distinguish what from the videotapes he reviewed.

**D.   Legal Standard**

The relief Plaintiff seeks is injunctive in nature. Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right." *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009), quoting *Winter*, 555 U.S. at 20.   An injunction may only be awarded upon a clear showing that the plaintiff is entitled to relief.  *See Winter*, 555 U.S. at 22.

Prisoners' requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act ("PLRA"), which requires that any injunctive relief awarded is "narrowly drawn, extends no further than necessary to correct the violation of the federal right, and is the least intrusive means necessary to correct the violation of the federal right."   Injunctive relief should be used "sparingly, and only

. . . in clear and plain case[s]." *Rizzo v. Goode*, 423 U.S. 362, 378 (1976).

**E.   Analysis**

For the following reasons, the court FINDS that Plaintiff fails to satisfy the legal prerequisites for injunctive relief and RECOMMENDS denying his Request for Hearing to the extent it seeks further injunctive relief than he has already received.

**1.   *No Supporting Evidence***

Plaintiff names nurses, guards, investigators, State and federal officials, and inmates as potential witnesses, yet submits nothing showing that these individuals possess relevant evidence or knowledge about his claims in the Request for Hearing. *See generally*, Doc. Nos. 67, 73-81, 84-86, 89, 91, 93. For example, Plaintiff states that several HCF nurses observed, took pictures, or wrote medical reports regarding his injuries. Although he had ample time before and after the hearing to obtain and proffer such evidence, Plaintiff provides no nurses' statements, photographs, or HCF medical records detailing his injuries.  Instead, the record shows that Plaintiff had failed to make a proper request to review or copy his medical records by September 24, 2014, two months after the alleged  assaults

occurred.[6]  *See* Antonio Decl., Doc. No. 87; *see also* Order
Denying Motions to Compel, Doc. No. 100.

Plaintiff names guards, investigators, prison
officials, HCF Internal Affairs officers, and DEA agents who he
claims knew he was an informant and suggests may have observed or
known about the alleged assaults.  *See generally*, Doc. Nos. 67,
73-81, 84-86, 89, 91, 93.  Plaintiff says he notified Warden
Espinda, Investigator Nakashima, the Hawaii State Ombudsman, DPS
Director Ted Sakai, and other prison officials about the
retaliation he allegedly suffers at HCF.  *Id.*  Plaintiff fails,
however, to submit statements from any of these individuals, or
copies of his letters or grievances, showing that he reported
Manuma's, Feagai's, and Sarkissian's allegedly retaliatory acts.
Nor does he explain or provide support showing when ACO Tuifau
allegedly sexually assaulted him and when he reported this
assult.  This information would, at a minimum, support his claims
for retaliation.

Finally, Plaintiff names inmates who allegedly saw one
or more of the assaults, or experienced similar treatment at HCF.
*Id.*  Plaintiff again provides nothing from these inmates showing
they saw the alleged assaults or experienced similar abuse.
While the court recognizes the difficulties Plaintiff encounters

---

[6] Plaintiff clearly understands how to make such a request.  On June 10,
2014, nearly a month *before* the events at issue here, he submitted an
unverified March 17, 2014 Inmate Injury Report alleging Capt. Paleka assaulted
him, and seven unverified photos apparently taken at the HCF medical unit.
Doc. No. 55, PageID #249.  The Injury Report determines that Plaintiff's
injuries were "Inmate/ Self-Inflicted," and the photos are either dated
between 2012 and 2013, or undated.  *Id.*

obtaining such statements from other inmates, his own unsupported allegations regarding their knowledge are insufficient to support granting injunctive relief. Plaintiff also fails to explain how these inmates' allegedly similar assaults are related to *his* claims of retaliation for *his* assistance as a confidential informant, or to his report that ACO Tuifau sexually abused him.

### 2. *Plaintiff Confuses the Dates and Details of His Claims*

In his Request for Hearing, Plaintiff unequivocally states that Manuma grabbed his arm and threatened him on **July 13, 2014**. *See* Doc. No. 65. He later alleges that Manuma assaulted him on **July 30, 2014**, *after* Plaintiff told *Manuma* about Feagai's alleged assault. *See* Doc. No. 85, PageID #392. He then claims Manuma assaulted him on **July 26, 2014**, *after* Plaintiff spoke to Captain Paleka about Feagai's alleged assault. *See* Doc. No. 86, PageID #402. Plaintiff does not explain these discrepancies.

Plaintiff asserts Feagai kicked him "in my balls threat[en]ing me," during a cell checkup on **July 24, 2013.**[7] Doc. No. 65, PageID #310. He later alleges Feagai kicked him in the groin in his cell on **July 23 and 24, 2014**, for filing a complaint against ACO Tuifau. *See* Doc. 85, PageID #392. Plaintiff then alleges that (1) Feagai came into his cell **on July 26, 2014**, told him to disrobe, kicked him to the floor, and pounded his head on

---

[7] The court accepts that this is a typographical error. It is unclear, however, whether Plaintiff meant July 23, 2014, or July **24, 2014**. In his Request for Hearing, however, Plaintiff was specific that the assault occurred on one specific date, not on two consecutive days.

the toilet; (2) Feagai and Sarkissian called him to the ACOs'
window on **August 1, 2014**, where Feagai beat his face on the
window; and (3) Feagai threatened him and cut his hand in the HCF
High Security Special Housing Unit ("SHU"), cell 9, on **August 4,
2014**. Doc. No. 91, PageID #426. At the August 28, 2014 hearing,
however, Plaintiff unequivocally stated that the last time *anyone*
assaulted him was Feagai on **July 26, 2014**.

In his Request for Hearing, Plaintiff claims that
Sarkissian set him up so that three inmates could assault him in
cell 12 on **August 1, 2014**. Doc. 65. Plaintiff later alleges
that this assault occurred on **July 3, 2014**. *See* Doc. No. 86.
Plaintiff then claims that Sarkissian and Feagai called him to
the ACO window on **August 1, 2014**, at 6:00 p.m., listened while he
reported this assault to "Nurse Borah," and Feagai then assaulted
him. Doc. No. 91, PageID #425-26.

Plaintiff fails to explain why he alleged that Manuma
and Feagai assaulted him, and Sarkissian set him up for assault,
only once each in his Request for Hearing, but has since alleged
numerous assaults against them that all allegedly occurred *before*
he signed and sent his Request for Hearing. Nor does he explain
why he failed to mention these other alleged retaliatory acts at
the August 28, 2014 hearing.

Adding to the confusion, Plaintiff has also alleged
that (1) ACOs Kenny and Rich set him up so USO and other inmates
could sexually abuse, kick, and cut "his head and eye open", *see,*

14

*e.g.*, Doc. Nos. 1, 62, 64; (2) ACO Tuifua allowed three USO inmates to attack him on **February 7, 2014**, threatened Plaintiff, grabbed his neck, hurt his arm, forced him to the floor, and called him a "walking d[ea]d man," several times for informing on Tuifua's friends and family, Doc. Nos. 14-16, 33, 39, 46; and (3) Captain Paleka assaulted and threatened him on **March 17 and April 17, 2014**, Doc. Nos. 20, 33, 46, 55.[8]

Plaintiff first raised his claim that ACO Tuifau *sexually* assaulted him in February 2013, **on July 19 and 25, 2014**. *See* Doc. Nos. 62, 64. Plaintiff does not explain why he waited so long to report this sexual abuse, or why failed to raise this claim in his original and six proposed amended complaints. Equally perplexing, Plaintiff initially alleged that ACO Hoolehua was with Tuifau during this alleged sexual assault, but has omitted this fact in his later documents. *See id.* Plaintiff has since elaborated on Tuifau's alleged sexual assault in many filings. *See, e.g.*, Doc. Nos. 67, 85, 86, 91

The court FINDS that Plaintiff's contradictory and unsupported claims in the Request for Hearing do not clearly show a likelihood of success or raise serious questions on the merits. While Plaintiff's claims may be sufficient to overcome 28 U.S.C. § 1915(g)'s "imminent danger of serious physical injury" bar or withstand a Rule 12(b)(6) motion to dismiss, they are insufficient to grant preliminary injunctive relief.

---

[8] At the August 28, 2014 Hearing, however, Plaintiff explicitly stated that he loved Paleka and COS Antonio and had no complaints against them.

The court also FINDS that Plaintiff fails to clearly or plainly establish irreparable harm absent an injunction. *See Rizzo*, 423 U.S. at 378. To show "irreparable harm," Plaintiff must do more than simply allege imminent harm; he must demonstrate it. *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); *see* Fed. R. Civ. P. 65(b). Even if Plaintiff satisfied these elements for injunctive relief, he has received more than the relief he sought: a hearing on his claims. Additionally, Plaintiff is and has been in protective, restricted custody since August 2014,[9] and HCF officials are well aware of his claims. The relief he has already attained is narrowly drawn and extends no further than necessary. *See* 18 U.S.C. § 3626(a)(2). In the absence of exceptional circumstances, the court will not intervene in the day-to-day running of the prison. *See, e.g., Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (prison officials entitled to substantial deference); *Sandin v. Conner*, 515 U.S. 472, 482–83 (1995) (disapproving the involvement of federal courts in the day-to-day-management of prisons). The court therefore FINDS that neither the balance of equities nor the public's interest favor additional injunctive relief.[10]

---

[9] Plaintiff was apparently moved from the unit where the alleged assaults took place on or about August 2, 2014, and was then moved to a Special Holding Unit on or about August 28, 2014.

[10] Moreover, Feagai, Manuma, and Sarkissian are not yet parties to this suit. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 111-12 (1969) (holding a court may not issue an order against individuals who are not parties to the suit). The court discusses Plaintiff's request to amend or
(continued...)

Accordingly the court FINDS that Plaintiff does not clearly show that injunctive relief is necessary and RECOMMENDS that Plaintiff's Request for Hearing be DENIED without prejudice.

### III.   **REQUEST TO AMEND OR SUPPLEMENT COMPLAINT**[11]

After the August 28, 2014 hearing on Plaintiff's Request for Hearing, Plaintiff submitted a document that stated in part, "Motion to Amend Defendants Sergeant [Feagai], ACO [Sarkissian], an[d] ACO Oba to Civ No 1300612."  Doc. No. 80, PageID #375.  This document provides no statement of facts explaining the basis for adding these individuals to Plaintiff's pleadings, although the court can surmise Plaintiff's intent with reference to his many other documents.

On September 15, 2014, Plaintiff submitted a seventh proposed amended complaint.  *See* Doc. No. 86.  Plaintiff names "PCA G Kaplan," "RSA D Borges," "Mail Room Sup Terry," "Dept S Nobriga," Sergeant Manuma, Sergeant Feagai, ACOs Sarkissian, Smieh, and Oba, and unnamed HCF medical staff.  *Id.*, PageID #396, #400.  Plaintiff alleges that (1) unnamed HCF medical staff refuse to provide him pain medications for injuries he received

---

[10](...continued)
supplement his Complaint to add his claims against Manuma, Feagai, and Sarkissian below.

[11] Plaintiff has tried to amend his Complaint many times.  *See, e.g.*, Doc. Nos. 9; 11, 36, 37, 41, 44, 46, 72, 78.  Each amended pleading was dismissed without prejudice because they were difficult to comprehend, incomplete, failed to clarify or reallege the original claims and defendants, or name the individuals allegedly involved in the new claims.  *See, e.g.*, Doc. Nos. 10, 26, 42, 43, 50, 83.

from HCF staff and gang members and for his liver condition; (2) Mail Room Supervisor Terry interfered with his mail between June 2 and September 11, 2014; (3) Sarkissian set him up on **July 3, 2014**, allowing three USO inmates to attack him when he exited the shower; (2) Feagai kicked him in the groin on **July 23 and 24, 2014**, to stop Plaintiff's complaint against Tuifau; (3) Manuma assaulted him on **July 26, 2014**, for telling Captain Paleka about the retaliation; (4) Smieh and Oba turned off his cell water and denied him toilet paper from **June 20 to August 29, 2014**; (5) RSA Borges illegally made him sign a behavior contract on **July 27, 2014**, when she knew he would be hurt. *Id.*, PageID #401-02. Plaintiff does not allege any facts against Nobriga or Kaplan.

## A.    Order to Show Cause Re: Unserved Defendants

Plaintiff's original Complaint alleged that unnamed HCF medical staff failed to respond to his requests for medical care for his alleged injuries. Plaintiff seeks to amend the Complaint now to add his new claims against the HCF medical staff, claiming they continue to deny him treatment or medicine. On December 17, 2013, the court ordered service on Defendants Espinda, Koria, Kenny, and Rich, and  informed Plaintiff to identify the unnamed Defendants (ACOs Ray and Law, HCF medical staff, and HCF Chief of Security) so they may be served. *See* Service Order, Doc. No. 7. On April 14, 2014, DPS informed Plaintiff and the court that it could not accept waiver of service for ACOs Kenny and Rich. Doc. No. 30.  Plaintiff has filed six proposed amended complaints but

has neither identified these individuals or elaborated on his claims against them.

In his Requests to Amend or Supplement, Plaintiff again fails to name these Defendants and provides no pertinent facts about his claims against them, such as the dates he was denied medical care, or how that denial was in retaliation for his confidential informant assistance. Amendment to add the unnamed HCF medical staff to his claims is unnecessary; these unnamed individuals and this claim are alleged in the original Complaint. Plaintiff's request to amend his Complaint to add these claims against the Defendants is DENIED.

Because Plaintiff has failed to name or serve the unnamed HCF medical staff, however, they are now subject to dismissal for Plaintiff's failure to serve them, or seek an extension of time to do so, within 120 days of the December 17, 2014 Service Order. *See* Fed. R. Civ. P. 4(m). This applies equally to Defendant ACOs Kenny, Rich, Law, and Ray. Plaintiff IS ORDERED to show good cause in writing on or before **December 9, 2014**, why the unnamed HCF medical staff and ACOs Kenny, Rich, Law, and Ray should not be dismissed for his failure to timely name or serve them.

**B. Plaintiff's Remaining Requests Are Treated as Requests to File a Supplemental Pleading**

Plaintiff's remaining requests allege claims against new defendants that occurred from June 20 through September 11, 2014, approximately eighteen months after he filed his Complaint.

"Rule 15(d) [of the Federal Rules of Civil Procedure] permits the filing of a supplemental pleading which introduces a cause of action not alleged in the original complaint and not in existence when the original complaint was filed." *Cabrera v. City of Huntington Park*, 159 F.3d 374, 382 (9th Cir. 1998) (internal quotation marks omitted). The pleading's title is not determinative; a pleading labeled "amended pleading" will be treated as a supplemental pleading if the new facts alleged occurred after the original complaint was filed. *United States ex rel Wulff v. CMA, Inc.*, 890 F.2d 1070, 1073 (9th Cir. 1989).

### 1. Legal Standard

Rule 15(d) provides:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Fed. R. Civ. P. 15(d). Rule 15(d) provides a mechanism for parties to file additional causes of action based on facts not existing when the original complaint was filed. *Eid v. Alaska Airlines*, Inc., 621 F.3d 858, 874 (9th Cir. 2010). "The purpose of Rule 15(d) is to promote as complete an adjudication of the dispute between the parties as possible by allowing the addition of claims which arise after the initial pleadings are filed."

*William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co., Inc.*, 668 F.2d 1014, 1057 (9th Cir. 1981).

"While leave to permit supplemental pleadings is 'favored,' it cannot be used to introduce a 'separate, distinct and new cause of action.'" *Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (citation ommitted); 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure: Civil 2D § 1509 (1990) (noting leave to file supplemental pleading will be denied where "the supplemental pleading could be the subject of a separate action") (citation omitted).

The standard used to evaluate a supplemental pleading under Rule 15(d) is the same as that used for a proposed amended complaint under Rule 15(a). *See, e.g.*, *Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002); *Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001); *Glatt v. Chi. Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996); *Womack v. GEO Grp., Inc.*, 2013 WL 491979, at *5 (D. Ariz. 2013); *Ibok v. Advanced Micro Devices, Inc.*, 2003 WL 25686529, at *2 (N.D. Cal. July 2, 2003). "Leave to file a supplemental complaint should be freely granted unless there is undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or the supplement would be futile." *Womack*, 2013 WL 491979, at *5. Futility by itself can justify denial of a motion to

supplement.  *See Bonin v. Calderon*, 59 F.3d 815, 845-46 (9th Cir. 1995).

### 2. *Application*

First, Plaintiff provides no facts to support his proposed supplemental claims against PCA G Kaplan and Dept S Nobriga in his proposed amended or supplemental pleading.  A complaint, whether original, amended, or supplemental, requires a plain statement of the claim showing that the pleader is entitled to relief.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a)(2).  These claims wholly fail to state a claim and the court DENIES Plaintiff's request to supplement the Complaint by adding Kaplan or Nobriga as futile.

Second, the court has unequivocally determined that Plaintiff's claims against Mail Room Sup Terry, alleging interference with his legal and personal mail, are without merit. *See* Oct. 30, 2014 Order Denying Mots. to Compel, Doc. No. 100. Plaintiff provides nothing persuading the court to revisit or reconsider this decision.  Plaintiff's request to supplement the Complaint to add this claim against Mail Room Sup Terry is DENIED as made in bad faith and futile.

Third, Plaintiff's claim that RSA Borges forced him to sign a "Behavior Contract that she know from they are I would get hurt," on July 27, 2014, makes little sense and fails to allege sufficient facts to allow the court to draw the reasonable inference that Borges is liable for any alleged misconduct.  *See*

*Twombly*, 550 U.S. at 555; Fed. R. Civ. P. 8(a)(2). Plaintiff fails to proffer "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Consequently, Plaintiff fails to "state a claim to relief that is plausible on its face." *Id.* at 678. Plaintiff's request to supplement the Complaint to add this claim against Borges is DENIED as futile.

Finally, the court considers Plaintiff's claims against Manuma, Feagai, Sarkissian, Smieh, and Oba as part of the claims for retaliation in his original Complaint, rather than a separate, distinct, and new cause of action. Permitting Plaintiff to add these claims will "serve to promote judicial efficiency, the goal of Rule 15(d)." *Planned Parenthood of S. Ariz.*, 130 F.3d at 402. Plaintiff's Request to Supplement the Complaint to name these defendants and these claims is GRANTED. Plaintiff may file an amended, supplemental pleading on or before **December 23, 2014.**

## IV. CONCLUSION

(1) The court FINDS Plaintiff fails to bear the burden of proof sufficient to grant injunctive relief and RECOMMENDS that his Request for Hearing be DENIED.

(2) Plaintiff's request to amend his Complaint to add claims against the unnamed HCF medical staff Defendants is DENIED.

(3) Plaintiff is ORDERED TO SHOW CAUSE in writing on or before **December 9, 2014**, why he failed to name and serve: ACOs Kenny, Rich, Law, Ray, the unnamed HCF medical staff, and unnamed HCF COS within 120 days of the December 17, 2013 Service Order. Failure to show good cause in writing by December 9, 2014, will result in their DISMISSAL from this action.

(4) Plaintiff's Request to Supplement Complaint to add claims against PCA G Kaplan, Dept S Nobriga, Mail Room Sup Terry, and RSA Borges is DENIED without prejudice as futile.

(5) Plaintiff's Request to Supplement Complaint to add claims against Manuma, Feagai, Sarkissian, Smieh, and Oba is GRANTED. Plaintiff SHALL file an amended, supplemental pleading on or before **December 23, 2014.**

(6) Defendants are ORDERED to file a dispositive motion addressing their Ninth Defense, Plaintiff's alleged failure to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997, or NOTIFY the court that they will not be filing such a motion, on or before **December 30, 2014**.

IT IS SO ORDERED. November 25, 2014, Honolulu, Hawaii.

Richard L. Puglisi
United States Magistrate Judge

*Pauline v. Espinda*, 1:13-cv-00612 HG/RLP; tro 2014/ Pauline 13-612 rlp (F&R); C:\Users\mferia\AppData\Local\Temp\notes90E4DD\Pauline 13-612 rlp (F&R req. hrg and supp C, No Report).wpd

24